UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  6:14-CR-00203-01** |
| **VERSUS** | **JUDGE DRELL** |
| **GARY HUNT (01)** | **MAGISTRATE JUDGE HANNA** |

### AMENDED REPORT AND RECOMMENDATION[1]

Before the Court is Defendant's Motion for Compassionate Release/Reduction in Sentence. (Rec. Doc. 571; 610). The Government opposed the Motion (Rec. Doc. 617). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that Defendant's Motion be denied.

### Factual Background

Defendant was the lead defendant in a fourteen-defendant indictment on multiple charges for conspiracy to distribute methamphetamine. (Rec. Doc. 1). He

---

[1] The Court issues this Amended Report and Recommendation for the purpose of correcting a typographical error regarding Defendant's sentence. This Amended Report and Recommendation clarifies that Defendant was sentenced to serve 120 *months*. See page 17.

pled guilty to Count 1 on February 5, 2016. (Rec. Doc. 464). Although his sentencing guideline range was 121 to 151 months, on May 25, 2016 he was sentenced to serve the mandatory minimum of 120 months, followed by five years of supervised release. (Rec. Doc. 479 and 480).

On August 22, 2019, approximately fifty-six months into his sentence, Defendant filed the Motion for Compassionate Release/Reduction in Sentence at issue. (Rec. Doc. 571). Subsequently appointed counsel filed a Memorandum in Support of his Motion. (Rec. Doc. 610). Defendant seeks compassionate release on the grounds that he suffers from a serious medical condition, and specifically aortic valve stenosis, among others. According to medical records submitted in support of the motion, in March 2019 he was diagnosed with severe aortic valve stenosis, and on July 24, 2019 he underwent aortic valve replacement. (Rec. Doc. 610-6; 610-8). By June, 2019, he was classified as Medical Care Level 3 and confined to his living quarters except for meals, pill line, and treatments (Rec. Doc. 610-7). In September 2019, he was transferred from FCC Oakdale to Terre Haute, FCI with multiple diagnoses including coronary artheroscloerosis, coagulation defect, hypertension, aortic valve disorder, heart failure, peripheral vascular disease, chronic obstructive pulmonary disease, and chest pain. (Rec. Doc. 610-9). He was still classified as Medical Care Level 3. Accommodations at that time included a single cell with lower bunk and electric razor due to Coumadin anticoagulation. (*Id.*)

The warden of FCC Oakdale approved Defendant's initial request for compassionate release, finding that, according to Oakdale Health Services, he was experiencing "deteriorating physical health that substantially diminished [his] ability to function in a correctional facility," and "incurable and progressing illness from which [he] will not recover." (Rec. Doc. 610-3). Nonetheless, on July 19, 2019 (prior to Defendant's aortic valve replacement surgery), the Assistant Director/General Counsel of BOP denied Defendant's request, finding that, despite his diagnoses, he ambulated independently, had no work restrictions, was independent in his activities of daily living (ADL) and instrumental activities of daily living (IADL). The General Counsel found that his medical conditions were considered chronic, but stable and well managed at that time. (Rec. Doc. 571-1, p. 12).

## **Applicable Law**

The First Step Act, effective December 21, 2018, amended 18 U.S.C. §3582(c)(1) regarding the Court's ability to modify a term of imprisonment. FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194. As applicable here, §3582(c)(1)(A) states:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

3

> bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The foregoing raises four inquiries for the court's determination: 1) whether the defendant has exhausted administrative remedies; 2) whether the factors set forth in 18 U.S.C. §3553(a) justify modification; 3) whether extraordinary and compelling reasons warrant a reduction; and 4) whether the reduction is consistent with Sentencing Commission policy statements. Because deference is given to the district court's decision, the Fifth Circuit requires "a thorough factual record," which necessitates "specific factual reasons, including but not limited to due consideration of the §3553(a) factors." *United States v. Chambliss*, No. 19-50741, 2020 WL 428933, at *2 (5th Cir. Jan. 28, 2020).

**1. Defendant has exhausted administrative remedies.**

Defendant contends that he exhausted his administrative remedies by first requesting compassionate release from the Warden. (Rec. Doc. 571-1, p. 5-10). The Warden approved his request and referred it to the BOP Office of General Counsel.

(Rec. Doc. 571-1, p. 11). The Assistant Director/General Counsel denied Defendant's request. (Rec. Doc. 571-1, p. 12-13). Defendant's Motion before the Court followed. The Government does not challenge, and the Court agrees, that Defendant has exhausted his administrative remedies under the applicable regulations, 28 C.F.R. § 571.63.

### 2. Application of §3553(a) factors.

§3852(c)(1)(A) next obligates the Court to consider the following factors, enumerated in §3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

    (i)    issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (ii)    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

    18 U.S.C.A. § 3553 (West)

Defendant was convicted of distributing and possessing with the intent to distribute methamphetamine. (Rec. Doc. 466). He stipulated that he was a known supplier of methamphetamine and regularly supplied conspirators with large quantities of methamphetamine for distribution in Louisiana. (Rec. Doc. 466-2). Defendant's presentence investigation report includes a notable history of convictions for drug related—and specifically methamphetamine—offenses, dating back to 1985 through 1997, when Defendant was sentenced to 72 months imprisonment and 60 months of supervised release in the United States District Court in Houston, Texas. (Rec. Doc. 481, p. 11-12). In adopting Defendant's pre-sentence investigation report and imposing a below-guideline sentence of 120 years (the minimum mandatory), the District Court considered Defendant's criminal history, as well as his poor health. Despite a previous similar conviction and ongoing health issues which pre-date this offense, Defendant resumed selling methamphetamine. He has not presented any compelling evidence to convince the Court to depart from the District Court's findings under §3553(a) at the time of sentencing. (See Statement of Reasons at Rec. Doc. 480, ¶VI.C.).

The Court finds, as did the District Court at the time of sentencing, that the nature and circumstances of the offense, as well as Defendant's history of prior similar crimes, justify maintaining the sentence. Similarly, Defendant's history of similar offenses, even despite pre-existing health issues, suggests that a reduction in

7

sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence of future criminal conduct, or protect the public from further crimes. Further, Defendant has presented no evidence that he has not and will not receive adequate medical care or other correctional treatment while incarcerated. In fact, Defendant submitted evidence that he underwent the necessary aortic valve replacement surgery and continues to undergo treatment for his health problems. Thus, the Court finds that the §3553(a) factors do not warrant a reduction in sentence. See *Chambliss*, 20 WL 428933, at *2-3, wherein the Fifth Circuit affirmed the district court's denial of the defendant's motion for compassionate release, despite the defendant's diagnosis of a terminal illness (end stage liver cancer), because, in considering the §3553(a) factors, the defendant had committed a serious drug crime and had a notable criminal history, and the defendant was getting adequate medical care in prison.

### 3. Existence of Extraordinary and Compelling Reasons.

The Court must next determine whether Defendant has shown "extraordinary and compelling reasons" for modification of his sentence. The Sentencing Commission's policy statements identify four reasons which qualify as "extraordinary and compelling," warranting modification:

(A) **Medical Condition of the Defendant.**

  (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis

      of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.** – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.** – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

    U.S.S.G. 1B1.13, Application Note 1.

The latter three categories are easily dismissed. Defendant does not qualify under (B), because he is neither older than 65, nor has he served the requisite time of his sentence.[2] Next, although Defendant initially sought compassionate release under (C) for family circumstances, Defendant has not shown the death or incapacitation of his minor child's caregiver. To the contrary, Defendant stated that his minor child currently resides with elderly acquaintances who agreed to act as the child's guardian in exchange for living in Defendant's home. (Rec. Doc. 571-1, p. 9-10). Finally, the BOP director did not find the existence of any other compelling reasons. (See Rec. Doc. 571-1, p. 12).

Defendant's Motion is primarily based upon his medical condition. In this context, BOP Policy 5050.50 provides reduction in sentence consideration "may be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover." Specific considerations under 5050.50 include whether the inmate is "completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."

---

[2] Defendant is currently 64 years old and has served just over 50% of his sentence.

Defendant contends that he is suffering from a "serious physical or medical condition" that "substantially diminishes [his] ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover." (Rec. Doc. 610-2, p. 4). He submitted medical and prison records evidencing treatment for aortic valve stenosis, which worsened from 2017 through March 2019. He underwent aortic valve replacement in July 2019. The most recent medical record provided, dated September 16, 2019, provides:

> This is a 63 year old male prisoner here for hospital follow up. He is an inmate in Oakdale Prison. He is s/p mechanical aortic valve d/u severe as and bicuspid aortic valve. He had postop complications including pericardia/ window for hematoma evacuation and pl effusions requiring thoracentesis x 3. He is on coumadin therapy with goal INR of 2.5-3.5. He had a limited echo 7/25/19 which showed an EF of 55-65% and no pericardial effusion. He has no cp. He has baseline dyspnea. He is euvolemic on exam. His sternal incision has healed. He is reporting leg pain c/w c/w claudication. On exam he has mottled dorsum aspects of both feet bl/. 1+ pt bil. Will check ble arterial us. Will get echo at next follow up eval mechanical aortic valve.
>
> PMH includes: bicuspid av, as, now s/p mechanical avr, hep c, copd, LHC 4/2019 which showed nml coronaries

(Rec. Doc. 610-6).

Also in September 2019, Defendant was transferred from FCC Oakdale to Terre Haute, FCI, with numerous current health problems noted, including coronary atherosclerosis, nonrheumatic aortic valve disorder, heart failure, peripheral vascular disease, and COPD, among others. (Rec. Doc. 610-9). He was classified as Medical Care Level 3. (*Id.*).

> The BOP Assistant Director/General Counsel found:
>
> Mr. Hunt, age 63, has a history of coronary atherosclerosis, age related cataracts, myopia, hypertension, non-rheumatic aortic valve stenosis, congestive heart failure, chronic rhinitis, chronic obstructive pulmonary disease, gastroesophageal reflux disease, and chronic hepatitis C. Mr. Hunt ambulates independently, and has no work restrictions. Mr. Hunt is independent in his Activities of Daily Living (ADLs), and Instrumental Activities of Daily Living (IADLs). Mr. Hunt's medical conditions are considered chronic, but are currently stable and well managed.
>
> Mr. Hunt does not meet the criteria for a RIS under section 3(b) due to his being independent with his ADLs and IADLs.
>
> (Rec. Doc. 610-4).

Absent any medical records or other evidence countering the General Counsel's finding that Defendant's medical condition is stable and that he incapable of performing ADL's and IADL's, the Court finds that Defendant has not shown that he qualifies for compassionate release for medical condition under §3582(c)(1)(A). Defendant submitted a BOP Medical Duty Status form wherein he was confined to his living quarters except for meals, pill line, and treatments; however, these restrictions expired on June 2, 2019 (even prior to his surgery and prior to BOP General Counsel's determination). (Rec. Doc. 610-7). Otherwise, Defendant did not provide any medical records indicating a future prognosis. Nor did he provide any evidence that he is incapable or limited in self-care, other than his own written statement. (Rec. Doc. 610-10). His conclusory statements, such as, "I am only capable of [] limited self-care, and am confined to my bed more than 50%

of my waking hours," are conclusory and unsubstantiated by any medical records or other evidence. Contrary to his position is the September 2019 inmate transfer form, which notes restrictions of a single cell, lower bunk (through August 2020), no CN gas, no pepper spray, and an electric razor due to Coumadin anticoagulation. (Rec. Doc. 610-9). There are no other noted accommodations suggesting that Defendant has any difficulty with his daily activities or is incapable of self-care. None of the records submitted indicate that Defendant suffers from a terminal illness or is incapable of performing ADL's or IADL's.

For comparison purposes, see e.g. *Villarreal v. United States*, No. CIV.A.1:04 CV 406, 2005 WL 1177873, at *2 (E.D. Tex. May 17, 2005) (Court upheld BOP determination [prior to First Step Act amendments] that the defendant, who suffered from congestive heart failure, was not eligible for compassionate release, where his doctor advised that his condition was stable and his life expectancy was indeterminate.); *United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 WL 597393, at *4 (D. Conn. Feb. 7, 2020) (Compassionate release denied where, although defendant had suffered a heart attack and undergone triple bypass surgery, his condition was stable.); *United States v. Bellamy*, No. CV151658JRTLIB, 2019 WL 3340699, at *4 (D. Minn. July 25, 2019) (Medical records supported that defendant with congestive heart failure was eligible for compassionate release,

where defendant was bound to a wheelchair and was unable to complete ADL's independently.)

### 4. **Sentencing Commission's policy statements.**

The Sentencing Commission's applicable policy statement is similar, but not identical to the language of §3582(c)(1)(A):

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
>   (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

FSG § 1B1.13

The foregoing policy statement has not been amended to comport with the First Step Act's amendments to §3582(c), which allow a defendant, not just BOP, to bring a motion for modification. See discussion in *United States v. Nevers*, No. CR 16-88, 2019 WL 7281929, at *4 (E.D. La. Dec. 27, 2019). In light of this conflict,

some courts have held that "the only way direct motions to district courts would increase the use of compassionate release is to allow district judges to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" *Id.*, quoting *United States v. Brown*, —— F. Supp. 3d ——, 2019 WL 4942051, at *3 (S.D. Iowa Oct. 8, 2019). Thus, many district courts have held that the BOP's determination is not dispositive, and the court may make its own determination as to whether the defendant has shown "extraordinary and compelling reasons" for modification. See *id.*, at fn. 28, citing cases.

As discussed above, the Court does not find that Defendant's current medical condition constitutes "extraordinary and compelling reasons" for a modification of his sentence. Nonetheless, the Court now considers whether Defendant is a danger to the community and whether a reduction would comport with the policy statement.

In order to determine whether the defendant poses a danger to the safety of others or the community, the court must consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse,

15

criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Defendant pled guilty to conspiracy to distribute and possess with intent to distribute methamphetamine, and he admitted to facts regarding his supplying of methamphetamine to others for distribution in Louisiana. (Rec. Doc. 466; 466-2). Defendant's presentence investigation report includes a long history of convictions for drug related—and specifically methamphetamine—offenses, dating back to 1985 through 1997, when Defendant was sentenced to 72 months imprisonment and 60 months of supervised release in the United States District Court in Houston, Texas. (Rec. Doc. 481, p. 11-12). In adopting Defendant's pre-sentence investigation report and imposing a below-guideline sentence of 120 months (the minimum mandatory), the District Court considered Defendant's criminal history, as well as his notably

16

poor health, in light of the §3142(g) factors. Defendant has not presented any evidence compelling a different result at this time. For these same reasons, the Court further finds that a reduction in sentence would not be consistent with policy statements. Accordingly, the Court finds that Defendant's Motion should be denied.

## **Conclusion**

The Court finds that Defendant has not shown that he is entitled to a reduction in sentence or compassionate release under §3582(c)(1)(A). He has not presented any evidence demonstrating a sufficiently serious medical condition as required by that statute and the applicable Sentencing Commission policy statements. Therefore, the Court recommends that Defendant's Motion for Compassionate Release (Rec. Doc. 571) be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Crim. P. 59(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized

by Fed. R. Crim. P. 59(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

      THUS DONE in Chambers, Lafayette, Louisiana on this 19th day of February, 2020.

                                                    _____
                                                    PATRICK J. HANNA
                                                    UNITED STATES MAGISTRATE JUDGE